# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANIKA BRADLEY, on Behalf of Herself and All Others Similarly Situated | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | Case No.: 1:17-cv-171 |
| SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., THE HOME DEPOT, INC., LOWE'S COMPANIES, INC., BEST BUY CO., INC., SEARS HOLDING CORPORATION, | ) ) ) ) ) ) ) ) | **COMPLAINT—CLASS ACTION DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Anika Bradley ("Plaintiff" or "Bradley"), by her attorneys, on behalf of herself and the Class set forth below, alleges the following upon information and belief, except for those certain allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge.

## NATURE OF THE ACTION

1.     This action relates to certain defective Samsung home washing machines that have an inherently dangerous defect. These washing machines "explode," or suffer catastrophic failure during a given machine's normal usage because of a design defect and/or manufacturing flaw.

2.     On or about September 10, 2016, Plaintiff purchased one of the subject Samsung washing machines (model number WA50K8600AV/A2) from a Lowe's Companies, Inc. store, in Greensboro, North Carolina for $1,425.71.

3.     On November 4, 2016, Samsung began a recall (Recall # 17-028) of 34 distinct models (the "Recalled Washing Machine(s)"), all being models of Samsung top-load washing machines, including the model purchased by Bradley as described above. A listing of the model numbers for the Recalled Washing Machines is attached hereto as Exhibit 1. The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact." The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis. There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See*, http://www.cpsc.gov/recalls/2017/samsung-recalls-top-loading-washing-machines.

4.     The remedies provided in Samsung's recall bulleting allow consumers the option of any one of the following: (1) an in-home repair or retrofit that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (2) a rebate to be applied towards the purchase of a new Samsung or other brand of washing machine, along with free installation of the new unit and removal of the old unit; or (3) a full refund for consumers who purchased their washing machine within the past thirty days of the recall announcement. *See*, *id.*

5. None of the options were available to the Plaintiff because: (1) the retrofit that Samsung proposes does not actually fix the defect in the machine so that Bradley can use the machine as she intended at purchase; (2) the rebate would have paid only for a fraction of the cost of replacement; and (3) Bradley purchased her machine more than thirty days prior to the recall.

6. Bradley brings this action on behalf of herself and other purchasers of the Recalled Washing Machines in the United States, its possessions, or territories from March 2011 to November 2016. Plaintiff seeks relief in the form of (1) an injunction against Defendants from any further sales of the Recalled Washing Machines and to take such other remedial action as may otherwise be requested herein; and (2) money damages to adequately and reasonably compensate owners of the Recalled Washing Machines who have, through no fault of their own, purchased defective and dangerous Samsung washing machines.

## **PARTIES**

7. Plaintiff Anika Bradley is a citizen of the State of North Carolina and is a resident of this District.

8. Defendant Samsung Electronics Co., Ltd. is a South Korean corporation headquartered in Seoul, South Korea. On information and belief, Samsung Electronics Co., Ltd. designs, manufactures, and distributes the Recalled Washing Machines for sale in this District. At all times relevant hereto, Samsung Electronics Co., Ltd. was in the business of distributing, marketing, promoting, and selling the recalled Washing Machines described herein throughout the United States and in this District. Thus, Samsung Electronics, Co.,

Ltd. purposely directed its conduct towards this District and at all times relevant engaged in a continuous course of business in this District by selling thousands of its washing machines and other consumer goods in this District every year.

9.      Defendant Samsung Electronics America, Inc. is a New York corporation with headquarters in Ridgefield Park, New Jersey and is a wholly-owned subsidiary of Samsung Electronics, Co., Ltd. Samsung Electronics America, Inc. is the warrantor of the products designed, manufactured, and distributed by Samsung Electronics Co., Ltd., and acts as Samsung Electronics Co., Ltd.'s agent in the processing of warranty claims related to defects in the manufacturing or materials used by Samsung Electronics Co., Ltd. during the manufacturing process. At all times relevant hereto, Samsung Electronics America, Inc. was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District. Samsung Electronics America, Inc. resides in, and engages in a continuous course of business in, this District and, based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis. Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. are referred to collectively herein as "Samsung."

10.      Home Depot, Inc. ("Home Depot") is a Delaware corporation with its headquarters in Atlanta, Georgia.  At all times relevant hereto, Home Depot was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Home Depot resides in, and engages in a continuous course of business in, this District and, based upon information

and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

11.     Lowes Companies, Inc. ("Lowes"), is a North Carolina corporation with its headquarters in Mooresville, North Carolina.  At all times relevant hereto, Lowes was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.  Lowes resides in, and engages in a continuous course of business in, this District and, based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

12.     Best Buy Co., Inc. ("Best Buy"), is a Minnesota corporation with its headquarters in Richfield, Minnesota.  At all times relevant hereto, Best Buy was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Best Buy resides in, and engages in a continuous course of business in, this District and, based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

13.     Sears Holding Corp. ("Sears") is a Delaware corporation with its headquarters in Hoffman Estates, Illinois.  At all times relevant hereto, Sears was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Sears resides in, and engages in a continuous course of business in, this District and, based upon information

and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

14.　　Samsung, Home Depot, Lowes, Best Buy and Sears are referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

15.　　This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2). The claims of the Class members in this class action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, and the total number of members of the proposed Class is believed to be greater than 100.

16.　　Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Bradley resides in this District, and the Defendants are subject to jurisdiction here and regularly conduct business in this District.

## FACTUAL ALLEGATIONS

17.　　On September 10, 2016, (model number WA50K8600AV/A2) from a Lowe's store, in Greensboro, North Carolina for $1,425.71. For the most part, Bradley's Recalled Washing Machine performed as expected.

18.　　On November 4, 2016, Samsung announced a "recall involve[ing] 34 models of Samsung top-load washing machines.  The Recalled Washing Machines have mid-controls or rear-controls. [The model numbers and serial information can be found on two labels affixed to the back of the machine."  https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines. The Recalled Washing Machines are detailed by

model number on Exhibit 2 hereto. The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact." The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis. There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See*, *id.*

19.     Bradley purchased her Recalled Washing Machine new for her new home, and at the time it was in excellent condition without any perceivable damage or defect. Moreover, Bradley used her Recalled Washing Machine solely for its intended purpose as a personal home appliance until November 4, 2016, when Samsung announced the recall.

20.     Samsung's recall allows owners of Recalled Washing Machines the option of any one of the following: (1) an in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (2) a rebate to be applied towards the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of old unit; or (3) a full refund for consumers who purchased their washing machine within the past 30 days of the recall announcement.

21.     In Bradley's circumstance, the third option was unavailable because she had purchased the Recalled Washing Machine outside of the thirty (30) day period. The rebate option was also a poor option because it provided a fraction of the cost to purchase a new

machine to replace the Recalled Washing Machine. The repair option was not viable as well.

22.     The repair option is not, in fact, a repair at all. In an effort to reduce costs, Samsung has contracted with local entities to reinforce the top of the Recalled Washing Machines with a retrofit. Additionally, instead of using appliance repair companies to institute the retrofit, Samsung has hired local subcontractors who are more in the line of handymen. For example, in many areas, Samsung is using Dish Network subcontractors, whose job primarily consists of installing television satellite disks on residences, to install the retrofit. In essence, in an effort to cut costs, Samsung's repair option does not even use individuals qualified to repair or evaluate the safety of the Recalled Washing Machines. They simply come to your house and snap on a new top.

23.     In addition, it is difficult, if not impossible, to get Samsung to provide the repair option. When consumers, like Bradley, request that Samsung repair their machine, it often takes weeks or months for a repair person to come and make the retrofit, and sometimes Samsung has refused to provide the repair at all. This was the case with Bradley. She followed the instructions in the recall notice and requested a repair. Samsung never contacted her back. Needing to have a working washing machine, Bradley then called Samsung multiple times, spending hours on the phone with their customer service representatives, but to no avail. Samsung would not provide a repair. Currently, Bradley still has a Recalled Washing Machine which she cannot safely use for the purpose it was marketed and sold.

24.     Even if Bradley had been able to have Samsung repair her machine, her troubles would not have been over. The repair or retrofit does not fix the issue. The retrofit merely reinforces the top of the Recalled Washing Machine, but consumers are then advised that they cannot use the Recalled Washing Machine for many of its intended purposes, such as using the high cycles needed to wash bedding, towels and heavy garments. In essence, the retrofit may barely do enough to keep the Recalled Washing Machines from exploding, although that remains to be seen, but they do not make the Recalled Washing Machines fit for the purposes they were marketed and sold to accomplish.

25.     As a result, under the terms of Samsung's agreement with the Consumer Products Safety Commission, Samsung is required to fully refund or replace the washing machine. *See*, http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement. For this reason, and upon information and belief, Samsung is deliberately making it as difficult as possible for individuals to have their Recalled Washing Machines repaired because it exposes Samsung to having to make a full replacement once consumers discover that the repair is ineffective.

26.     As in the case of Bradley, the rebates that Samsung offers to consumers are often times a fraction of the cost that consumers actually paid for their washing machines, and after multiple frustrating interactions with Samsung, it became apparent that it was difficult, if not next to impossible, to get Samsung to provide Bradley with relief that would allow her to use her washing machine as it was intended to be used.

{CCC:00189984.DOCX }

9

27.    After learning of Samsung's recall of the Recalled Washing Machines, Bradley was not able to use her Samsung washing machine as intended because of the danger posed from potentially having her washing machine "explode" during normal use. In addition to being without a working washing machine since November 2016, Bradley has been forced to spend frustrating time with Samsung attempting to have her defective washing machine repaired.

## THE RECALLED WASHING MACHINES

28.    The Recalled Washing Machines at issue in this action all have high-speed "direct-drive" mechanisms that spin the washer tub at speeds of approximately 1100 revolutions per minute.  The framing and dampening system of the Recalled Washing Machines is inadequate to withstand the force generated by each such machine's direct drive system.

29.    The models of Samsung's Recalled Washing Machines include the following:

| | | |
|---|---|---|
| WA40J3000AW/A2 | WA45H7000AP/A2 | WA45H7000AW/A2 |
| WA45H7200AW/A2 | WA45K7600AW/A2 | WA45K7100AW/A2 |
| WA48H7400AW/A2 | WA48J7700AW/A2 | WA48J7770AP/A2 |
| WA48J7770AW/A2 | WA50K8600AV/A2 | WA50K8600AW/A2 |
| WA52J8700AP/A2 | WA52J8700AW/A2 | WA400PJHDWR/AA |
| WA422PRHDWR/AA | WA456DRHDSU/AA | WA456DRHDWR/AA |
| WA476DSHASU/A1 | WA476DSHAWR/A1 | WA484DSHASU/A1 |
| WA484DSHAWR/A1 | WA48H7400AP/A2 | WA50F9A6DSW/A2 |
| WA50F9A7DSP/A2 | WA50F9A7DSW/A2 | WA50F9A8DSP/A2 |
| WA50F9A8DSW/A2 | WA52J8060AW/A2 | WA5451ANW/XAA |
| WA5471ABP/XAA | WA5471ABW/XAA | WA56H9000AP/A2 |
| WA56H9000AW/A2 | | |

30. The Recalled Washing Machines at issue here range in price from approximately $450.00 to $1500.00 and come with an express one-year manufacturer's warranty.

31. As explained above, this case involves Recalled Washing Machines that, in many instances, "explode." When the Recalled Washing Machines explode, they do so with such force that the machines are irreparably damaged. Indeed, the force of the explosion is capable of seriously injuring people and damaging property, rendering the Recalled Washing Machines unsafe for ordinary use.

32. Because of the inherent safety risk, the recall now includes a "Home Label Kit" or stickers that state that "consumers should only use the delicate or waterproof cycles when washing bedding, water-resistant and bulky items. The lower spin speed in the delicate or waterproof cycles lessens the risk of the washing machine top unexpectedly detaching from the washing machine chassis." *See*, https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines.

33. Even if a consumer is able to have Samsung "repair" their defective washing machine, they are still unable to use it for its intended purpose. Samsung advises consumers not to use the washing machines on heavy settings that would typically be used to wash bedding or heavier garments. In essence, Samsung has left consumers with the choice of using a defective product for the life of the product (regardless of whether the recall's reinforcement measures are applied or not), accepting a rebate that is often well below the amount it costs to actually replace a defective machine, or simply doing without.

34.     The defects in the Recalled Washing Machines are latent defects respecting the design of the machines and/or the manufacturing process related to the Recalled Washing Machines and such defects would not reasonably be discoverable by consumers when purchasing any of the Recalled Washing Machines.  These latent defects relate principally to the Recalled Washing Machines having structural and design defects in their framing and dampening systems which can cause the tubs to loosen and become projectiles over time.  Such defects in the Recalled Washing Machines manifest only after the point of sale and such manifestation often occurs outside of Samsung's express warranty period of one year.

35.     In selling the Recalled Washing Machines, Samsung provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  This express warranty further protects against defects in the tub for three years, as well as defects in the direct drive system for 10 years.  The warranty for the Recalled Washing Machines is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power. In addition to the express warranty described above, Samsung marketed, advertised, and warranted that the Recalled Washing Machines were of merchantable quality and fit for their intended purpose.  Samsung further marketed, advertised, and warranted that the Recalled Washing Machines were free from defects and the Recalled Washing Machines did not pose an unreasonable risk to persons or property.

36.     Samsung knew that the Recalled Washing Machines were prone to explosion and, therefore, that the Recalled Washing Machines were inherently defective,

{CCC:00189984.DOCX }

unmerchantable and unfit for their intended use.  Beginning as early as 2011, Samsung received high numbers of consumer complaints related to the Recalled Washing Machines for problems with their spin cycles, high vibrations, breaking springs, and even explosions related to the Recalled Washing Machines' spin cycles.  Moreover, Samsung has known that the exploding Washing Machines cause actual physical injury to consumers since no later than approximately October 24, 2013, when a woman in California was physically injured by a Samsung Washing Machine explosion. This incident lead Samsung to inspect her washing machine on November 22, 2013.

## CLASS ACTION ALLEGATIONS

37.    Bradley brings this suit as a class action on behalf of herself and on behalf of others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3) (the "Class").  The proposed Class consists of:

> All residents of the United States and its territories or possessions who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

38.    Bradley also bring this suit as a class action on behalf of the following subclass ("North Carolina Subclass"):

> All residents of the State of North Carolina who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

39.    Unless otherwise indicated, the Class and the North Carolina Subclass are referred to herein jointly as the "Class."

40. The members of the Class are so numerous that joinder is impracticable. Samsung is one of the largest manufacturers of residential washing machines in the world and it sells many thousands of residential washing machines annually in the United States and in the State of North Carolina through retailers such as Lowe's, The Home Depot, Best Buy and Sears.

41. Bradley's claims are typical of the claims of the entire Class because Bradley purchased a new Recalled Washing Machine in July 2011 from a Lowe's store in Saugus, Massachusetts.

42. Bradley will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Bradley has no interests antagonistic to those of other Class members. Bradley is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them.

43. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

    a. whether the Recalled Washing Machines pose unreasonable safety risks to consumers;

    b. whether Defendants knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

    c. whether Defendants concealed the safety risks that the Recalled Washing Machines pose to consumers;

d.     whether the safety risks that the Recalled Washing Machines pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a washing machine;

e.     whether the Recalled Washing Machines possess material defects;

f.     whether Defendants knew or should have known of the inherent defects in the Recalled Washing Machines when it placed them into the stream of commerce;

g.     whether Defendants concealed the defects from consumers;

h.     whether the existence of the defects are material facts reasonable purchasers would have considered in deciding whether to purchase a washing machine;

i.     whether the Recalled Washing Machines are merchantable;

j.     whether the Recalled Washing Machines are fit for their intended use;

k.     whether Defendants were unjustly enriched by the sale of defective Recalled Washing  Machines to the Plaintiff class;

l.     whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Recalled Washing Machines caused Class Members' injuries; and

m.     whether Defendants should be enjoined from further sales of the Recalled Washing Machines.

44.     Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Bradley knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

45.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

**FIRST CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**AGAINST ALL DEFENDANTS**

46.     Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

47.     The Recalled Washing Machines owned by Bradley and Class Members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

48.     These defects were present in such machines at the point of sale of the Recalled Washing Machines.

49.     Such defects place consumers and the public at serious risk for their own safety when the Recalled Washing Machines are used in consumers' homes.

50.     At all times relevant hereto, Samsung, Lowe's, The Home Depot, Best Buy, and Sears were under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis for the bargain between Samsung, Lowe's, The Home Depot, Best Buy and Sears, on the one hand, and Bradley and Class Members, on the other.

51.     Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Recalled Washing

Case 1:17-cv-00171-UA-LPA     Document 1     Filed 02/28/17     Page 16 of 39

Machines were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely washing clothes in a residential setting), and failed to conform to the standard performance of like products used in the trade.

52. Defendants knew or should have known that the Recalled Washing Machines pose a safety risk and are defective and knew or should have known that selling the Recalled Washing Machines to Bradley and Class Members constituted a breach of the implied warranty of merchantability.

53. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Bradley and Class Members bought the Recalled Washing Machines without knowledge of their defects or their serious safety risks.

54. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Bradley and Class Members purchased unsafe products which could not be used for their intended purpose including washing bedding, water-resistant items, and bulky items in a residential setting.

55. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Bradley and Class Members have suffered damages and did not receive the benefit of their bargain.

56. Defendants were unjustly enriched by keeping the profits for the unsafe products while never having to incur the cost of repair, replacement, retrofit, or a recall.

57. The defectively designed Recalled Washing Machines purchased by Bradley and all other Class Members are unfit for their intended and ordinary purposes because

they are prone to break and even explode when operated as instructed and intended by Defendants.

58.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Bradley and all the Class Members have suffered loss.

## SECOND CAUSE OF ACTION
## NEGLIGENCE AGAINST SAMSUNG

59.     Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

60.     Samsung owed a duty to Bradley and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the Recalled Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Bradley and Class Members from foreseeable and unreasonable risk of harm. Samsung breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Recalled Washing Machines.

61.     Samsung unreasonably failed to provide appropriate and adequate warnings and instructions about its defective Washing Machines, and this failure was a proximate cause of the harm for which damages are sought. In addition, at the time the Recalled Washing Machines left its control, Samsung knew, or in the exercise of reasonable care should have known, its defective Washing Machines posed a substantial risk of harm to the life and property of its customers. And at the time the Recalled Washing Machines left its control, Samsung knew, or in the exercise of reasonable care should have known, the Recalled Washing Machines it designed, manufactured, produced, tested, inspected,

marketed, distributed, and sold, created an unreasonable safety risk and would fail to perform as intended.

62. Samsung acted unreasonably in designing the Recalled Washing Machines, and this conduct was a proximate cause of the harm for which damages are sought. Further, at the time the Recalled Washing Machines left the control of Samsung, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Washing Machines. Furthermore, at the time the Recalled Washing Machines left the control of Samsung, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a Washing Machine of this design.

63. Samsung knew, or in the exercise of reasonable care should have known, that the Recalled Washing Machines created unreasonable safety risks. Samsung further knew, or in the exercise of reasonable care should have known, that the Recalled Washing Machines could cause property damage, personal injury, and/or death.

64. Based on this knowledge, Samsung had a duty to disclose to Bradley, and Class Members, the serious safety risks posed by the Recalled Washing Machines and the defective nature of the Recalled Washing Machines.

65. Samsung had a further duty not to put the defective Recalled Washing Machines on the market and has a continuing duty to replace its unsafe Recalled Washing Machines, remove them from the market and seek a recall of them from consumers.

{CCC:00189984.DOCX }

66. Samsung failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Recalled Washing Machines by, among other things, failing to design and manufacture the Recalled Washing Machines in a manner to ensure that, under normal intended usage, they would not pose unreasonable risk to life and property.

67. Samsung failed to exercise reasonable care in failing to warn, or to warn adequately and sufficiently, either directly or indirectly, Bradley and Class Members of the Defects in the Recalled Washing Machines.

68. Samsung failed to exercise reasonable care when it knew of the safety risks the Recalled Washing Machines posed and actively concealed those risks from Bradley and Class Members.

69. Samsung failed to exercise reasonable care when it knew of the safety risks the Recalled Washing Machines posed and failed to replace, repair or recall the Recalled Washing Machines that it knew were unsafe and defective.

70. As a direct and proximate result of Samsung's negligence, Bradley and Class Members bought the Recalled Washing Machines without knowledge of their defective nature or of their serious safety risks.

71. As a direct and proximate result of Samsung's negligence, Bradley and Class Members purchased unsafe products which could not be used for their intended use.

72. As a direct and proximate result of Samsung's negligence, Bradley and Class Members have suffered damages.

73.     Bradley and Class Members seek to recover the damage caused by Samsung. Given Samsung's conscious disregard for the safety of Bradley and Class Members, they also seek an award of exemplary damages.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### AGAINST SAMSUNG

74.     Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

75.     Samsung is, and at all times relevant was, a merchant with respect to washing machines.

76.     As set forth above, Samsung had knowledge of the defects alleged herein and that they pose serious safety risks to consumers like Bradley and Class Members.

77.     Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Washing Machines were "warranted by SAMSUNG against manufacturing defects in materials and workmanship."

78.     In its warranty to customers, Samsung also warrants in writing that it provides the following warranties: one year parts and labor; two years control board parts; three years stainless steel tub part; and ten years motor components.

79.     The Recalled Washing Machines have inadequate framing and dampening systems to withstand the extreme forces generated by the direct drive system that powers the machines' drums, often allowing the Recalled Washing Machines to fail when the tub becomes disassembled from the frame during a machine's "explosion."  Moreover, the

unbalanced load warning is defective in that it fails to stop the Recalled Washing Machines' spin cycle before the machines explode.

80. Alternatively, the limitations in Samsung's warranty are unconscionable as described herein.

81. By selling Recalled Washing Machines containing these defects to consumers like Bradley and Class Members after it gained knowledge of the defects, Samsung breached its express warranty to provide washing machines that were free from defects.

82. Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Recalled Washing Machines when it failed to do so despite knowledge of the known defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

83. The limited warranty of repair for the Recalled Washing Machines fails in its essential purpose because the contractual remedy is insufficient to make Bradley and Class Members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

84. Also, as alleged in more detail herein, at the time Samsung warranted and sold the Recalled Washing Machines, it knew that the Recalled Washing Machines did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Washing Machines.

85. Accordingly, Bradley and Class Members are not limited to the limited warranty of "repair", and Bradley and Class Members seek all remedies allowed by law.

86.     As more fully detailed above, Samsung knew that Bradley's washing machine was susceptible to malfunction but failed to provide defect-free washing machines to Bradley or Class Members, or to timely provide an adequate retrofit to remedy the Recalled Washing Machines.

87.     As more fully detailed above, Samsung was provided with notice, and has been on notice, of the defects and of its breach of express written warranties through its own internal and external testing, as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Recalled Washing Machines, and customer complaints. Yet, Samsung failed to repair, replace, or retrofit the Recalled Washing Machines to ensure they were free of materials defects or component malfunctions as Samsung promised.

88.     As a direct and proximate result of Samsung's breach of its express warranty,

89.     Bradley and Class Members have suffered damages.

90.     Samsung has been unjustly enriched by keeping the profits from the sale of its unsafe washing machines while never having to incur the cost of repair.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF MAGNUSON-MOSS ACT
## (15 U.S.C. §§ 2301-2312)–WRITTEN WARRANTY
## AGAINST SAMSUNG

91.     Bradley hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

92.     The Recalled Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

{CCC:00189984.DOCX }

93. Bradley and Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

94. Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

95. Samsung provided Bradley and Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

96. In its capacity as warrantor, and by the conduct described herein, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is null and void.

97. All jurisdictional prerequisites have been satisfied.

98. By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

99. As a result of Samsung's breach of express warranties, Bradley and Class Members are entitled to revoke their acceptance of the Recalled Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF MAGNUSON-MOSS ACT
## (15 U.S.C. § § 2301-2312)—IMPLIED WARRANTY AGAINST
## ALL DEFENDANTS

{CCC:00189984.DOCX }

100.    Bradley hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

101.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

102.    Bradley and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

103.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

104.    Lowe's, The Home Depot, Best Buy, and Sears are "warrantors" as that term is defined by 15 U.S.C. § 2301(5).

105.    Defendants provided Bradley and Class Members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

106.    In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is void.

107.    All jurisdictional prerequisites have been satisfied herein.

108.    By Defendants' conduct as described herein, including Defendants' knowledge of the defects contained within the Recalled Washing Machines and their action, and inaction, in the face of that knowledge, Defendants have failed to comply with its obligations under their written and implied promises, warranties, and representations.

109.    As a result of Defendants' breach of implied warranties, Bradley and Class Members are entitled to revoke their acceptance of the Recalled Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT AGAINST
## ALL DEFENDANTS

110.    Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

111.    Defendants received proceeds from their sale of the defective Recalled Washing Machines, which were purchased by Bradley and Class Members for an amount far greater than the reasonable value of such machines because of such machines' defects.

112.    In exchange for the purchase price paid by Bradley and Class Members, Defendants provided the defective Recalled Washing Machines that are likely to fail within their useful lives and pose a material risk of "exploding."  There is no reasonable or acceptable rate for washing machines to explode.  Such defects render the Recalled Washing Machines unfit, and indeed unsafe, for their intended use.

113.    Bradley and Class Members reasonably believed that the Recalled Washing Machines would function as advertised and warranted, and did not know, nor could have known, that the Recalled Washing Machines contained latent defects at the time of purchase.

114. Defendants know of and appreciate the benefit conferred by Bradley and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

115. Under the circumstances, permitting Defendants to retain the proceeds and profits from the sales of the defective Washing Machines described herein would be unjust. Hence, Defendants should be required to disgorge this unjust enrichment.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION LAWS
## AGAINST ALL DEFENDANTS

116. Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

117. Defendants' deceptive trade practices in, *inter alia*, misrepresenting the quality and character of the Recalled Washing Machines, and selling the Recalled Washing Machines knowing same to be defective, violate the following state consumer statutes:

    a. The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), et seq.;

    b. The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

    c. The Arizona Consumer Fraud Act, A.R.S. § 44-1522;
    d. The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), et seq.;

    e. The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, et seq.;

    f. The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), et seq.;

g.     The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), et seq.;

h.     The Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, et seq.;

i.     The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), et seq.;

j.     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), et seq.;

k.     The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5), and (7), et seq.;

l.     The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), et seq.;

m.     The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq., and Idaho Code § 48-603C, et seq.;

n.     The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), et seq.;

o.     The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

p.     The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, et seq.;

q.     The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), et seq.;

r.     The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), et seq.;
s.     The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

t.     The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), et seq., and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.;

u.     The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), et seq.;

v.     The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii), and (iv), (5)(i), and (9)(i), et seq.;

w.     The Michigan Consumer Protection Act, M.C.P.L.A.     §§ 445.903(1)(c)(e), (s) and (cc), et seq.;

x.     The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

y.     The Mississippi Consumer Protect Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e), and (g), et seq.;

z.     The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq.;

aa.    The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-103, et seq.;

bb.    The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), et seq.;

cc.    The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), et seq.;

dd.    The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), et seq.;

ee.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, et seq.;

ff.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, et seq.;

gg.    The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh.    The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), et seq.;

ii. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, et seq.;

jj. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), et seq.;

kk. The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), et seq.;

ll. The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), et seq.;

mm. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, et seq.;

nn. The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), et seq.;

oo. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), et seq.;

pp. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), et seq.;

qq. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), et seq.;

rr. The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. §§ 17.46(a), (b)(5) and (7), et seq.;

ss. The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i) et seq.;

tt. The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), et seq.;

uu. The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, et seq.;

vv. The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5)(6) and (14), et seq.;

{CCC:00189984.DOCX }

ww. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq.;

xx. The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, et seq.; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), et seq.

118.    By this Cause of Action, Bradley plead on behalf of the Class violations of all the foregoing consumer and deceptive trade practice laws.

## EIGHTH CAUSE OF ACTION
## FRAUD AGAINST SAMSUNG

119.    Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

120.    Upon discovering that her Samsung washing machine was subject to recall, Bradley quickly contacted Samsung to repair or replace the washing machine. Samsung represented in their recall notice that they would repair any Recalled Washing Machine free of charge to the consumers, including Bradley.

121.    The truth is that Samsung cannot repair these washing machines. They can perform a retrofit that will reinforce the washing machines, but it will not allow consumers to use these washing machines for the purposes for which they were advertised and purchased. In addition, as part of their agreement with the Consumer Protection Safety Commission, any washing machine that cannot be repaired must be replaced by Samsung at no cost to the consumer. As a result, Samsung is doing everything in its power to keep consumers from accepting the repair option, including scheduling repairs and then having them cancelled, failing to return phone calls for those who wish to schedule repairs, and

other stalling tactics, in order to force consumers to accept the rebate option, thereby freeing Samsung from the obligation to replace the washing machines once it becomes apparent that the repair does not fully fix the problem.

122. Upon information and belief, Samsung had no intention of keeping their representation that they would repair Bradley's defective washing machine, since it is in Samsung's financial interest to force Bradley and other Class Members, to use Samsung's proffered rebate to purchase a new Samsung washing machine, or to use Samsung's proffered rebate of a lesser amount to purchase another brand of washing machine as the cost of the rebate is, on information and belief, less expensive than the cost of repair to the Recalled Washing Machines. In addition, Samsung is unable to repair the Recalled Washing Machines. Even after the retrofit is done and the top of each washing machine is reinforced, consumers are still unable to use their washing machines as intended. As a result, Samsung would owe every consumer who has their Recalled Washing Machine repaired a full refund or a new washing machine immediately after the repair has been completed. *See* http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement.

123. At the time Samsung made the representation that they would repair their Recalled Washing Machines, they were fully aware of the cost savings Samsung would benefit from by "encouraging" owners of the Recalled Washing Machines, including Bradley, to take the proffered rebate rather than having their existing washing machine repaired. As a result, Samsung intentionally made it difficult, if not impossible, for Bradley

and other Class Members to obtain retrofits for their Samsung washing machines, hoping consumers would choose to accept the rebate option instead of a retrofit.

124.    As a result of Samsung's fraud, Bradley and Class Members are entitled to full compensation for the loss of their Recalled Washing Machines, including time lost in seeking to have the Recalled Washing Machines repaired, and time and money spent finding other means to wash their belongings while they waited for Samsung to repair their Recalled Washing.

**NINTH CAUSE OF ACTION**
**Violation of the Unfair & Deceptive**
**Trade Practices Act, N.C. Gen. Stat. §**
**75-1.1, *et al.* Against All Defendants**

125.    Bradley re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

126.    Defendants unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the Recalled Washing Machines as safe and effective to members of the North Carolina Subclass.

127.    Before they advertised, marketed, sold and represent the Recalled Washing Machines, Defendants knew or should have known of the defective nature and unreasonable dangers posed by the Recalled Washing Machines.

128.    The North Carolina Subclass purchased and used the Recalled Washing Machines for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

129.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiff and the North Carolina Subclass would not have purchased and/or paid for the Recalled Washing Machines and would not have incurred the related costs and injuries.

130.    Defendants engaged in the deceptive conduct while at the same time obtaining, under false pretenses, moneys from the injured Plaintiff and North Carolina Subclass that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

131.    Unfair methods of competition or deceptive acts or practices that were proscribed by law include the following:

    a.   Representing that goods or services have characteristics, uses, or benefits that they do not have;

    b.   Advertising goods or services with the intent not to sell them as advertised; and

    c.   Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

132.    Plaintiff and the North Carolina Subclass were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative of Defendants' conducted directed at Plaintiff and the North Carolina Subclass was to create demand for and sell the Recalled Washing machines. Each aspect of Defendants' conduct combined to artificially create sales of the Recalled Washing Machines.

133.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the Recalled Washing Machines.

134.    Had Defendants not engaged in the deceptive conduct described above, the injured Plaintiff and North Carolina Subclass would not have purchased and/or paid for the Recalled Washing Machines and would not have suffered the related damages.

135.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to Plaintiff and the North Carolina Subclass constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

136.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of N.C. Gen. Stat. §§ 75-1.1 *et seq.*

138.    Under the statute listed above to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

139.     Defendants violated the statutes that were enacted in this state to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Recalled Washing Machines were fit to be used for the purpose for which they were intended, when in fact the Recalled Washing Machines were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

140.     The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

141.     Defendants had actual knowledge of the defective and dangerous condition of the Recalled Washing Machines and failed to take any action to cure such defective and dangerous conditions.

142.     The injured Plaintiff and the North Carolina Subclass relied upon Defendants' misrepresentations and omissions in determining which washing machine to purchase.

143.     By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff and the North Carolina Subclass has suffered ascertainable losses and damages.

144.     As a direct and proximate result of Defendants' violations of the states' consumer protection laws, the injured Plaintiff and North Carolina Subclass has sustained

economic losses and other damages and is entitled to statutory and compensatory, damages in an amount to be proven at trial.

145.    As specifically described in detail above, Defendants knew that the Recalled Washing Machines were defective, could not perform for the purposes they were marketed or intended and were dangerous for use by Plaintiff and the North Carolina Subclass.

146.    As a direct and proximate result of Defendants' representations, Plaintiff and the North Carolina Subclass has experienced and/or will experience significant damages, including but not limited to physical injuries and the medical bills resulting therefrom, loss of the use of their Recalled Washing Machines, time spent seeking to have their Recalled Washing Machines replaced, and money spent renting a washing machine or using a laundromat while their Recalled Washing Machine was unusable.

**WHEREFORE,** Bradley individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Bradley as representative for the Class and appointing her counsel as lead counsel for the Class;

C.    An order awarding Bradley and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Samsung described herein;

D.    An Order enjoining Samsung, Lowes, The Home Depot, Best Buy, and Sears, their agents, successors, employees, and other representatives, from engaging in or continuing to engage in the manufacture (in the case of Samsung), marketing, and sale of

{CCC:00189984.DOCX }

the defective Recalled Washing Machines; requiring Samsung, Lowes, The Home Depot, Best Buy and Sears to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Recalled Washing Machines; and requiring Samsung, Lowes, The Home Depot, Best Buy, and Sears to preserve all evidence relevant to this lawsuit and to notify Recalled Washing Machine owners, with whom it comes in contact of the pendency of this and related litigation;

E.      Restitution as authorized by law;

F.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

G.      Payment to the Class of all damages associated with lost time in attempting to get Samsung to abide by the terms of the recall;

H.      Payment to the Class of all damages associated with the Class's inability to use their Recalled Washing Machines such as fees from renting a washing machine or using a laundromat;

I.      An assessment of punitive damages, consistent with the actual harm Samsung has caused and the reprehensibility of its wanton and willful conduct, and the need to punish and deter such conduct;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

L.     Any and all other and further relief as this Court deems just, equitable, or proper.

**JURY TRIAL DEMANDED**

This the 28th day of February, 2017.

        **CRABTREE, CARPENTER & CONNOLLY, PLLC**

        BY:    /s/ Guy W. Crabtree
                Guy W. Crabtree
                North Carolina State Bar No. 8234
                Post Office Drawer 3600
                Durham, North Carolina 27702
                Telephone:   (919) 682-9691
                Facsimile:    (919) 688-9107
                GWC@cccattorneys.com
                *Attorneys for Plaintiff*

        **FEDERMAN & SHERWOOD**

        BY:    /s/ William B. Federman
                William B. Federman
                To be admitted *pro hac vice*
                10205 N. Pennsylvania Avenue
                Oklahoma City, Oklahoma 73120
                Telephone:   (405) 235-1560
                Facsimile:    (405) 239-2112
                wbf@federmanlaw.com
                *Attorneys for Plaintiff*

{CCC:00189984.DOCX }